| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>------------------------------------------------------------ X<br>TYRONE JOHNSON,<br>　　　　　　　　　　　　　　Petitioner,<br>　　　　　　- against -<br>PHILIP D. HEATH, Superintendent,<br>　　　　　　　　　　　　　　Respondent.<br>------------------------------------------------------------ X | NOT FOR PUBLICATION<br><br><br>**MEMORANDUM & ORDER**<br><br>No. 11 CV 6270 (ERK) |

KORMAN, J.:

I assume familiarity with the underlying facts and circumstances of this case. Johnson advances four arguments in support of his petition.

I.    *Officer Blandino's Testimony Regarding Leroy Vann's Statements*

Johnson argues that the admission at trial of Leroy Vann's statement to Police Officer John Blandino violated the Confrontation Clause. Pet. Mem. at 21-37, ECF No. 16. Specifically, Officer Blandino testified at trial that when he responded to the shooting at Vann's home, he asked Vann what had happened, to which Vann responded that "Ty . . . Ty drives a white Navigator . . . Ty from 121st [Street]," "by the projects," tried to rob him. Officer Blandino testified that immediately thereafter, while he rode with Vann in an ambulance, he told Vann that he had "a big hole in [his] chest" and that he "might not make it." Officer Blandino further testified that Vann then told him that "Tyrone did this to me. He drives a white Navigator. He comes to my club from 121st [Street]." Vann died shortly thereafter.

Two other individuals, Vann's mother and her home health aide, also testified regarding Vann's statements immediately after he was shot. Specifically, Vann's mother testified at trial that Vann said "I've been shot, burning up inside. Tyrone did it . . . Tyrone from the projects

1

shot me." The home health aide testified at trial that Vann "repeatedly" said that Tyrone shot him and that Tyrone drove a white Navigator and was from the projects near 121st Street. In addition, evidence was introduced at trial that a white Navigator was registered in Johnson's mother's name, that Johnson resided near 121st Street, and that Johnson frequented the club that Vann owned.

Johnson's argument pursuant to the Confrontation Clause fails for two reasons. First, even if some of Vann's statements to Officer Blandino were testimonial in nature, the Supreme Court explicitly declined to decide whether testimonial dying declarations are excepted from the requirements of the Confrontation Clause. *See Crawford v. Washington*, 541 U.S. 36, 56 n.6 (2004) ("We need not decide in this case whether the Sixth Amendment incorporates an exception for testimonial dying declarations."). Thus, the admission into evidence of such statements at Johnson's trial was not "contrary to" established law.

Second, the statements made by Vann to his mother and to his mother's home health aide immediately after the shooting, as well as the statements initially made by Vann to Officer Blandino, were nontestimonial in nature. "[T]o the extent that the admission of certain subsequent and largely redundant statements made by [Vann] to [Officer Blandino] may have violated the rule articulated in *Crawford*, the evidence of the defendant's guilt, including, inter alia, the properly admitted testimony, without reference to the alleged error, was overwhelming, and there is no reasonable possibility that the alleged error might have contributed to the defendant's convictions." *People v. Johnson*, 66 A.D.3d 703, 704 (N.Y. App. Div. 2009) (2d Dep't) (citations omitted). Thus, nor is the alleged error sufficient under the harmless error standard applicable in habeas corpus proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619 (1993).

II.     *Ineffective Assistance of Appellate Counsel*

Johnson argues that he was denied effective assistance of appellate counsel in violation of the Sixth Amendment.  Specifically, Johnson argues that his appellate counsel failed to appeal (1) the admission of Officer Blandino's "UF 61" report on the basis that it was "improper bolstering" and (2) an "inaccurate and prejudicial readback" of testimony to the jury.  Pet. Mem. at 37-47.  The Appellate Division, citing to *Jones v. Barnes*, 463 U.S. 745 (1983), denied Johnson's application for a writ of error coram nobis raising this claim.  The Appellate Division's decision was on the merits, entitling it to be "granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."  *Harrington v. Richter*, --- U.S. ----, 131 S. Ct. 770, 785 (2011).  Thus, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was reasonable."  *Id*.

To have been entitled to relief from the Appellate Division, Johnson had "to show both that his [appellate] counsel provided deficient assistance and that there was prejudice as a result." *Id*. at 787.  Here, the alleged failures of Johnson's appellate counsel are insufficient to surmount "*Strickland*'s high bar[.]"  *Padilla v. Kentucky*, 559 U.S. 356, ----, 130 S. Ct. 1473, 1485 (2010). First, Officer Blandino's UF 61 report was cumulative to the nearly identical testimony that he, Vann's mother, and Vann's mother's home health aide gave regarding Vann's statements implicating Johnson as the person who shot Vann.  Thus, even if the UF 61 report was admitted in error, it was harmless.  Second, even if the trial court erred in failing to correct the mistaken readback of one witness's testimony, the Appellate Division's conclusion that appellate counsel was not deficient in raising this issue on appeal was not unreasonable.  *See Jones*, 463 U.S. at 754 (counsel has no "duty to raise every 'colorable' claim" on appeal).  Moreover, as noted

3

above, "the evidence of [Johnson's] guilt . . . was overwhelming," rendering harmless a one-word slip in the readback of testimony.

III.     *Right to be Present*

Johnson argues that two private conversations between the trial judge and the assistant district attorney – one long before the jury was selected and one after the jury verdict – violated "his right to be present and/or be represented by counsel, at all stages of the proceedings." Pet. Mem. at 50. First, even if these conversations were improper, it is clear that neither was a "material stage" of the proceeding against Johnson. Second, even if Johnson's right to be present was violated, such error was harmless. *See Yarborough v. Keane*, 101 F.3d 894, 896-98 (2d Cir. 1996) (applying harmless error analysis to alleged violation of constitutional right to be present).

IV.     *Right to Fair Trial*

Johnson argues that he was denied "his due process right to a fair tribunal." Pet. Br. at 50. Nevertheless, the findings of fact made by the judge who presided over Johnson's 440 proceeding support his rejection of Johnson's claim that certain comments by the trial judge "demonstrated a bias for the prosecution[.]" *See People v. Johnson*, 2006 WL 3040172, at *5 (N.Y. Sup. Ct. Oct. 20, 2006) (Queens Cnty.). Moreover, the test here is whether the holding of the judge who presided over the section 440 proceeding constituted an unreasonable application of clearly established Supreme Court law. While the Supreme Court has held that a defendant is entitled to an unbiased judge even in the absence of a showing of actual prejudice, *Tumey v. Ohio*, 273 U.S. 510, 535 (1927), the determination of the section 440 judge was not an unreasonable application of that holding under the facts as he found them nor did it reflect an unreasonable determination of the facts in light of the evidence presented.

4

The petition is **DENIED**.

                                                    SO ORDERED.

Brooklyn, New York
June 11, 2013

                                              *Edward R. Korman*

                                              Edward R. Korman
                                              Senior United States District Judge